IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IN RE: RECEIVER ) | C/A No. 3:10-3141-MBS |
| ) | |
| ) | **O R D E R** |
| ) | |

This matter arises out of a fraudulent investment operation ("Ponzi Scheme") orchestrated by Messrs. Tony Pough, Joseph Brunson, and Timothy McQueen. On August 2, 2007, the court issued a Pre-Indictment Restraining Order (ECF No. 6) that enjoined Messrs. Pough, Brunson, and McQueen, doing business under various names, and their agents, servants, employees, attorneys, family members, and those persons in active concert or participation with them (collectively "3HB" or "The Three Hebrew Boys," as more specifically delineated in the Plan), from directly or indirectly selling, transferring, attaching, disposing of in any manner, the property described in Exhibit A to the Pre-Restraining Order. The court issued an order on September 5, 2007, amended October 10, 2008, appointing Beattie B. Ashmore, Esquire as Receiver, with the Receiver's duties further delineated in the court's April 15, 2010 and January 18, 2011 Orders (collectively "Court Orders").

On August 21, 2008, Messrs. Brunson, McQueen, and Pough were indicted by a federal grand jury in the United States District Court for the District of South Carolina. See United States v. Brunson, Cr. No. 3:08-0615. A Superseding Indictment was entered on September 10, 2008. In the Superseding Indictment, Messrs. Brunson, McQueen, and Pough were charged with multiple counts of mail fraud, transporting stolen goods and money laundering. In addition, the Superseding Indictment provided that upon conviction certain property would be subject to forfeiture. On November 20, 2009, Messrs. Brunson, McQueen, and Pough were convicted on all counts and the jury returned a special verdict for forfeiture in the amount of $82 million. On February 23, 2010,

the court entered a Preliminary Order of Forfeiture. On December 14, 2010, the court sentenced Messrs. Brunson, McQueen, and Pough to terms of imprisonment and ordered them to pay restitution in an amount up to $82 million.

Pursuant to the Court Orders and related to the underlying criminal matter noted above, the Receiver took over all the financial and business affairs for 3HB. The Court Orders required the Receiver, among other things, to locate and manage assets previously acquired by and/or in the name/possession of 3HB (the "Receiver Estate"). In the Court Orders, the court tasked the Receiver with accomplishing all things necessary to effectuate restitution to the victims of the Ponzi Scheme in accordance with the sentences set forth in the criminal case. The Receiver began collecting information for the purpose of distributing the proceeds of the Receiver Estate using the Proof of Claim ("POC") form approved by the court by Order dated April 15, 2010 and then disseminating and/or providing notice of the POC to all potential victims of the Ponzi Scheme. A summary of the efforts regarding the dissemination and notice of the POCs is found in the Statement regarding the Status of the Receiver's Efforts to Locate and Manage Assets as well as the Process for Claims Administration and Claims Distribution filed on December 13, 2010 (the "Statement") (ECF No. 427). The court set the deadline for submission of POCs as August 16, 2010. Thereafter, the Receiver's staff conducted an initial review of timely submitted POCs and began the process of resolving discrepancies and reconciling the information already known to the Receiver through an independent review and analysis of 3HB records.

Consistent with the responsibilities described hereinabove, the Receiver studied and developed a system for the analysis and administration of the claims, as well as the ultimate distribution of the Receiver Estate (the "Plan"). On May 16, 2011, the Receiver filed a Motion to Approve Plan for Claims Administration and Distribution of Proceeds (ECF No. 496). The Motion

was disseminated to claimants and potential creditors of the Ponzi Scheme, as well as published on the Receiver's web site. An opportunity to respond and object to the Plan was provided. The responses received by the court were filed on June 15, 2011 (ECF No. 509). A hearing was held on this matter on June 16, 2011.

The court has broad powers and wide discretion to determine relief in an equity receivership. United States v. Peters, Civ. No. 08-5348 ADM/JSM, 2011 WL 2810311, *27 (D. Minn. Jan. 25, 2011) (quoting Sec. & Exch. Comm'n v. Elliott, 953 F.2d 1560, 1566 (11th Cir.1992)). This broad discretion derives from the inherent powers of an equity court to fashion relief. Id. (quoting Elliott, 953 F.2d at 1566). Within that broad authority lies the power to approve a plan of distribution proposed by a federal receiver. Id. (citing cases). "In determining whether to adopt a plan that distributes receivership assets to investors victimized by a Ponzi scheme, courts are governed by 'the fundamental principal' that the plan 'should be equitable and fair, with similarly-situated investors treated alike.'" Id. at *28 (quoting Sec. & Exch. Comm'n v. Credit Bancorp, Ltd., No. 99 Civ. 11395 RWS, 2000 WL 1752979 (S.D.N.Y. Nov. 29, 2000)).

The Receiver reviewed various methods of distribution, including the "Net Loss" method. However, the Receiver has proposed using a method of distribution commonly referenced as the "Rising Tide" method. The Receiver describes the "Rising Tide" method as follows:

> The Rising Tide method treats those that deposited money with the 3HB but actually received nothing from the Ponzi scheme more favorably than those that deposited money and received financial returns (i.e payoffs, cash, cars, or other benefits from the 3HB). We have determined that a large percentage of the approximately 4000 Claimants that filed a timely Proof of Claim form received nothing from the 3HB. Therefore, these Claimants can expect to receive a greater percentage of the funds to be distributed from the Receiver. Conversely, there is a smaller percentage that received financial benefits from the 3HB during the course of the scheme and these Claimants will receive a smaller percentage of the funds to be distributed from the Receiver, and in some instances nothing during the initial distribution from the Receiver.

"Message to Claimants," found at http://www.3hbreceiver.com/ on June 29, 2011.

Thus, under the Rising Tide method of distribution, claimants are allowed to retain previously received funds, but those funds are credited against claimants' respective pro-rata distributions from the Receiver Estate. See U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., No. 07 C 3598, 2010 WL 960362 (N.D. Ill. March 15, 2010). Payments received by the claimant prior to the Ponzi Scheme's collapse are treated as "distributions" on par with the distributions to be made by the Receiver, so that prior amounts paid by 3HB are credited against the amount that would otherwise be paid from the Receiver Estate. See Sec. & Exch. Comm'n v. Parish, C/A No. 2:07-cv-00919-DCN, 2010 WL 5394736, *3 (D.S.C. Feb. 10, 2010). Under this method of distribution, more money will be distributed to victims who received no monetary or other return from their participation in the Ponzi Scheme as compared to those victims who did receive such a return. This method does not penalize claimants based on the timing of their investments. See Commodity Futures Trading Comm'n v. Equity Financial Group, LLC, No. Civ. 04-1512 RBK AMD, 2005 WL 2143975 (D.N.J. Sept. 2, 2005). Rather, the "Rising Tide" method of distribution brings the recovery of claimants who received no payments during the course of the Ponzi Scheme equal to those claimants who did receive payments during the course of the Ponzi Scheme. See Parish, 2010 WL 5394736 at *7. Specifically, the Receiver has proposed the following formula:

> (Amount to Distribute) DIVIDED BY (Total Actual Deposits made by all allowed Claimants) MULTIPLIED BY (the Actual Deposit associated with each Claim) MINUS (Actual Return associated with each Claim).

The court received and considered a number of objections filed with the court, as set forth hereinabove, as well as questions raised during the hearing by Eva Hightower Chapman. The court has considered the following objections:

*William Smith*: States he is being penalized because he filed a petition against the court. He feels he is being made a victim twice.

*Geraldine J. Crummy*: States "I am filing a motion with the court in response to the Receiver's motion to distribute the claims."

*Haribo Regis Steward*: States the victims should receive all their money back with interest, and 3HB should pay court costs, Receiver's costs and taxes.

*Delores Scruggs*: States she did not know about the claims until late in 2010.

*Albert Williams and Lawrence Smith*: State that the Plan is hard to understand. They state that they have showed it to a lawyer who wants to know about interest and says there has been no transparency. They want to see the final report of the Receiver after the distribution. They state they cannot object until they see the Receiver's actions as well as a financial statement. They think all the monies should be distributed. The process is flawed and borderline criminal. They are being defrauded by the Receiver. They do not understand how the process began with in excess of $20 million in cash and securities and $10-15 million in additional assets with only $20 million to be reimbursed. They have requested information and received no response. They want the Receiver to provide to the victims a financial statement.

*Tammy Chaney*: States she did not submit a POC because she was told it would be used against her.

*Ernest Chambers*: He wants a 100% return of his money.

*Florence Chambers*: She wants a 100% return of her money.

*Zalandre Chambers*: She wants a 100% return of her money.

*Tekasha Chambers*: She wants a 100% return of her money.

The court finds that the objections filed by these eleven individuals do not raise substantive issues with respect to Plan procedures and/or the "Rising Tide" methodology urged by the Receiver. The Plan provides a mechanism whereby claimants may object to information relevant to their claims. The court is aware of the hardship many victims of Messrs. Pough, Brunson and McQueen have undergone. The court has the utmost confidence in the Receiver to marshal and liquidate as many assets as possible for the benefit of claimants. Unfortunately, vast amounts of the monies

obtained through the Ponzi Scheme have evaporated in maintaining the exorbitant lifestyle enjoyed by Messrs. Pough, Brunson and McQueen and many of their associates and members of their families.

Eva Hightower Chapman filed objections and appeared at the hearing. The court believes that it allayed her concerns regarding the Receiver and her potential distribution. Further, Ms. Chapman was provided information by the United States Attorney's Office with respect to a victims' advocate who could answer additional questions.

The court finds that the purpose of the Plan is to provide the most fair and equitable distribution mechanism for the allocation of the Receiver Estate to those who were victimized by the 3HB, considering the fact that some claimants received monetary returns from their 3HB investments and some claimants did not receive any return. The court finds that the Plan provides adequate due process including notice and opportunity to be heard to all persons affected therein and that the Plan is fair and equitable in its method for claims analysis and method of distribution. Accordingly, the court grants the Receiver's Motion to Approve Plan for Claims Administration and Distribution of Proceeds and adopts the Plan as amended and entered contemporaneously herewith.[1]

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

July 1, 2011.

---

[1] The proposed plan submitted by the Receiver for the court's review is adopted as submitted except for a change in the wording to make clear that all Objection Forms should first be submitted to the Receiver's office and all unresolved Objection Forms will be subsequently filed with the court.